**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ROBERT L. IVORY, II**                                                                 **PLAINTIFF**

**VS.**                                   **CASE NO. 5:15CV00378 PSH**

**CONNIE HUBBARD**                                                             **DEFENDANT**

## ORDER

Plaintiff Robert L. Ivory, II ("Ivory") filed this civil rights action against Connie Hubbard

("Hubbard") on December 2, 2015.  Ivory is an inmate in the custody of the Arkansas Department

of Correction ("ADC"), and Hubbard is a nurse at the ADC's Delta Regional Unit, where Ivory

resided at the time the relevant events occurred.  Generally, Ivory alleges Hubbard was deliberately

indifferent to his serious medical needs.  Hubbard seeks summary judgment, filing a motion, brief,

and statement of facts.  Docket entry nos. 67-69.  Ivory has responded to the pending motion for

summary judgment.  Docket entry no. 71.

### I.  Facts and Relevant Pleadings

*The Complaint:*  Ivory's complaint alleges he injured his right foot, calf, ankle, and Achilles

tendon while playing volleyball on July 10, 2015.  Ivory states he was seen by a nurse and given a

prescription for three days' rest ("no duty script").  Complaint, page 5.  Ivory was seen on July 13

by Hubbard.  Ivory described to Hubbard feeling a snap and hearing a pop when jumping, and stated

he was in severe pain.   Hubbard "then examined my right foot, leg, calf, and tendon area" and

indicated she would schedule Ivory for x-rays.  *Id.*  According to Ivory, Hubbard then gave him a

seven day medical restriction script.  X-rays were taken "a couple of days later" and Ivory was seen

by Hubbard again on or about July 21. Complaint, page 6. Ivory indicated that Hubbard told him the x-rays looked okay "but when I asked her about my Achilles tendon she told that those x-rays couldn't be seen but that everything looked ok." *Id.* According to the complaint, Hubbard then asked Ivory to return his crutches and return to his work as a visitation porter, which required him to set up tables and chairs for visitation and events. Ivory claims Hubbard disregarded the fact that he was still having problems walking and was in severe pain.

Ivory states that he requested sick call on or about July 23, but did not receive a response. On August 2, Ivory started the grievance process by filing an informal resolution document. On August 4, Ivory indicates he received a response, directing him to fill out another sick call request. On that same day, Ivory states that he started step 2 of the grievance process. Attached to the complaint are the grievance documents, including an "Acknowledgment or Rejection of Unit Level Grievance" from the ADC Inmate Grievance Coordinator to Ivory. Complaint, page 13. This document notified Ivory of receipt of his grievance and informed him that he should receive further communication regarding the grievance by September 2. On September 2, Ivory received a response to the grievance from the Administrator/Mental Health Supervisor, stating:

> You claim that after a Provider visit on 7.13.15 to follow up on a 7.10.15 injury to your right ankle, the Provider failed to properly diagnose and treat your complaint. You claim your ankle was never sprained and that something else was causing the pain. You claim that the pain continues.
>
> At the Provider visit on 7.13.15 the Provider diagnosed your complaint as a sprained ankle and this can be found in her clinical documentation. The plan of care you were given at that time is appropriate for your diagnosis. If your pain is not controlled and you feel that there is another problem submit another sick call. This grievance is without merit.

Complaint, page 14.

Ivory appealed this decision, and the appeal was found without merit on October 19. This

decision, attached to the complaint, states in pertinent part:

> You state during your initial visit with Mr. [sic] Hubbard, APN, you let her know that you sustained an injury to your right calf, ankle, and foot; not just your ankle. You state you specifically asked Ms. Hubbard about your Achilles tendon because you thought you might have torn it. You state that is when she told you that the x-ray of your Achilles tendon was not viewable, but for you not to worry about it because she knew that is was okay. You state you thought that an MRI was done to check a person's tendon.

> A review of your electronic medical record indicates that on July 10, 2015, you were seen as a walk-in for an injury to your ankle. You were given a three day lay-in and you were referred to the provider. On July 13, 2015, you were seen by Ms. Hubbard and she ordered x-rays on your right ankle and provided you with a seven day lay-in and crutches. On July 21, 2015, you were seen for a follow-up of a sprain to your right ankle. Ms. Hubbard noted that you were able to bear weight and dorsi and plantar flex your foot. On August 18, 2015, you were transferred to another facility. On August 31, 2015, you were seen by Dr. Jones regarding right ankle pain and you were ordered an MRI (completed on September 11, 2015). On September 16, 2015, the provider submitted a consult for you to be seen by an orthopedic doctor. On September 30, 2015, you were seen by the orthopedic and surgery was recommended. The surgery has been scheduled.

> Ms. Hubbard is licensed to practice medicine in the state of Arkansas and has seen and treated you as she deemed appropriate and clinically indicated based on her medical judgment; therefore, I find this appeal without merit.

Complaint, page 21. It is undisputed that Ivory had surgery to repair the Achilles tendon on October 30, 2015, and that an infection required him to have an additional surgery on March 29, 2016.

*The Motion for Summary Judgment:* Hubbard, in her motion for summary judgment, agrees with many of the relevant facts alleged by Ivory. For example, both parties agree Ivory sought and received medical care on July 10, 2015, for his lower leg injury. The parties agree that Hubbard examined Ivory on July 13, ordered x-rays, prescribed no duty and crutches, and scheduled him for a follow-up appointment on July 21. The parties agree that x-rays were taken on July 15, and that Ivory saw Hubbard at the July 21 follow-up appointment.

The medical records submitted with the motion for summary judgment provide additional

details regarding Hubbard's treatment of Ivory. On July 13, Hubbard first saw Ivory, and the records show his subjective complaint was pain in his Achilles, and that he "claims it is his tendon and not ankle." Docket entry no. 69-1, page 5. Hubbard recorded that she was "unable to adequately assess Achilles at this time, lower leg is swollen and he resists movement and also will hold foot in such a way unable to perform achille dtr." *Id.* Hubbard's assessment was either an ankle sprain or a possible Achilles tear. She prescribed a 20 day dose of ibuprofen, crutches, scheduled x-rays, and directed no duty, no sports activities, and no yard call for seven days. A follow-up appointment with Hubbard was made for July 21. Docket entry no. 69-1, pages 5-8. X-rays taken on July 15 showed ankle swelling but no fracture or dislocation. When seen by Hubbard on July 21 she recorded "he is able to bear weight. He is able to dorsi and plantar flex foot. There is no foot lag with walking." *Id.* at page 10. Hubbard assessed Ivory to have a sprained right ankle, he was released to return to duty, restricted from sports activities for two weeks, and instructed to return for care as needed. Ivory was transferred from the Delta Unit to the Wrightsville Unit on August 18, 2015. On August 24, Ivory requested to see Wrightsville Unit medical personnel because he was still having right foot problems. A September 11 MRI revealed a full tear of Ivory's Achilles tendon. *Id.* at page 15.

In addition to the medical records, Hubbard submitted affidavits from her, Director of Health Services Administrator William Kirk, Dr. Jeffrey Stieve, Loretta Brown, excerpts from Ivory's deposition, and portions of the Delta Yard Call Log and the Wrightsville Gym Call Log from August 18, the date Ivory arrived at his new unit. These documents highlight two areas in which the parties are in disagreement: (1) Hubbard alleges there is no record Ivory submitted a sick call request from July 10 through August 18, when he was transferred to the Wrightsville Unit, while in his complaint

Ivory alleges he submitted a July 23 sick call request that went unanswered;[1] and (2) Hubbard contends Ivory, against her medical instructions, went to recreation call thirteen times between July 24 and August 17, while Ivory argues that he only went to recreation call nine times and did not participate in sports activities in any event but simply walked while on "rec call."

## II.  Relevant Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

---

[1]Ivory does not allege that Hubbard was responsible for the failure to respond to the sick call request he allegedly submitted on July 23.

### III.  Analysis

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  To succeed with an inadequate medical care claim, a plaintiff must allege and prove that:  (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs.  *Dulany v. Carnahan*, 132 F.3d at 1239.  Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  *See also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison medical personnel are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

In this case, Ivory's allegations amount to no more than a mere disagreement with Hubbard about treatment decisions.  This disagreement cannot be elevated to the level of a constitutional violation.  Hubbard treated Ivory on July 13 and July 21, obviously contemplating that Ivory may have had an Achilles tear.  Ultimately, Hubbard concluded, based upon the x-rays and her examinations, that Ivory had a sprained ankle.  Ivory disagreed, self-diagnosing an Achilles tendon tear.  Although the September 11 MRI revealed an Achilles tear, it does not follow that Hubbard necessarily misdiagnosed Ivory in July, as the tear may have been partial in July and deteriorated.

Even generously assuming Hubbard erred in diagnosing an ankle sprain rather than an Achilles tear, such an error would amount to, at most, negligence, but would not amount to deliberate indifference to Ivory's admittedly serious medical need. In order to show Hubbard was deliberately indifferent, Ivory must show she acted with a highly culpable state of mind approaching actual intent. *See Choate v. Lockhart*, 7 F.3d 1370 (8th Cir. 1993). Ivory falls far short of shouldering this burden.

There are no material facts in dispute, as the disagreements between the parties (e.g., disputes over the number of times Ivory attended "rec call" or the dispute over whether Ivory submitted a sick call request on July 23) are not vital facts. To the contrary, the parties agree on the material facts about Ivory's injury and his interactions with Hubbard when treated on July 13 and 21. At most, Ivory and Hubbard disagreed on the diagnosis. This disagreement does not amount to an Eighth Amendment violation, and Hubbard is entitled to judgment as a matter of law. Her motion for summary judgment is granted, and Ivory's claims are dismissed with prejudice. The Court certifies that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

IT IS SO ORDERED this 20th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE